## IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE FOURTH CIRCUIT

MARY LYNN SHUMATE,

*Plaintiff-Appellant,*

v.

CITY OF LYNCHBURG; GREGORY WORMSER,
Fire Chief, In his Official Capacity;
WYNTER BENDA, City Manager, In his Official Capacity,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT LYNCHBURG

## OPENING BRIEF OF APPELLANT

Thomas E. Strelka
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
540-283-0802
thomas@vaemployment.law

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1428__      Caption: _Mary Lynn Shumate v. City of Lynchburg; Gregory Wormser; Wynter_ B.

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Mary Lynn Shumate_____
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                          ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                     ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?                     ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Thomas E. Strelka _____          Date: _____05/28/2024_____

Counsel for: _Mary Lynn Shumate, Appellant_____

Print to PDF for Filing

Page

TABLE OF AUTHORITIES ..........................................................................iii

I.      JURISDICTIONAL STATEMENT ......................................................1

II.     STATEMENT OF ISSUES .............................................................. 2

III.    STATEMENT OF THE CASE......................................................... 2

        a. Fire Department officials lodge a complaint against Shumate
           while her complaint of discrimination was under
           investigation..................................................................... 4

        b. As Shumate pursued legal remedies, the City shored up its
           alleged non-retaliatory reason for her demotion ............................ 7

IV.     SUMMARY OF ARGUMENT .........................................................11

V.      STANDARD OF REVIEW...............................................................13

VI.     ARGUMENT ...............................................................................15

        a. The District Court erred in determining that the City, and
           therefore the City's employees, were entitled to sovereign
           immunity on Appellant's FAWPA claim .........................................15

           i.  The City does not benefit from a default position of
               sovereign immunity because the Eleventh Amendment
               does not apply to municipalities.................................................17

           ii. The District Court incorrectly applied a governmental
               function analysis used to determine municipality liability
               in tort ..................................................................................... 18

        b. Shumate has raised a factual dispute with regard to the City's
           allegedly non-retaliatory reason for her demotion ....................... 22

i.  Captain Brown's patently false Declaration establishes "pretext," showing that the City's allegedly non-retaliatory reason for Shumate's demotion was a "cover" for the clear intent to retaliate ...................................................................... 23

ii. Shumate was not harassing anyone; she was inquiring whether her subordinate had any difficulty abiding by the City's EEO Policy ...................................................................... 27

c.  Appellant has provided instances of differential treatment sufficient to satisfy the fourth element of a prima facie case of Title VII discrimination............................................................ 28

VI.  CONCLUSION.................................................................................. 29

VII. REQUEST FOR ORAL ARGUMENT ........................................... 29

# TABLE OF AUTHORITIES

## Cases

*Advanced Reimbursement Sols. LLC v. Spring Excellence Surgical Hosp. LLC,*
 No. CV-17-01688-PHX-DWL, 2020 U.S. Dist. LEXIS 20176
 (D. Ariz. Feb. 5, 2020) ..................................................... 24-25

*Alexander v. City of Chesapeake,*
 108 Va. Cir. 161 (Va. 2021) ................................................... 20

*Ambush v. Montgomery Cnty. Gov't Dep't of Fin. Div. of Revenue,*
 620 F.2d 1048 (4th Cir. 1980) ............................................... 24

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) .............................................................. 14

*Aufdencamp v. Irene Stacy Community Mental Health Ctr.,*
 234 F. Supp. 2d 515 (W.D. Pa. 2002) .................................... 26

*Baka v. City of Norfolk,*
 No. 2:21-cv-419, 2022 U.S. Dist. LEXIS 43559
 (E.D. Va. Mar. 11, 2022) ....................................................... 20

*Brackney-Wheelock v. City of Charlottesville,*
 652 F. Supp. 3d 603 (W.D. Va. 2023) ............................... 20, 21

*Bumbales v. City of Vandalia,*
 No. 2:18 CV 13 JMB, 2018 U.S. Dist. LEXIS 124271
 (E.D. Mo. July 25, 2018) ....................................................... 20

*City of Chesapeake v. Cunningham,*
 604 S.E.2d 420 (Va. 2004) .................................................... 19

*Coleman v. Maryland Court of Appeals,*
 626 F.3d 187 (4th Cir. 2010) ................................................. 28

*Cunningham v. Gen. Dynamics Info. Tech.,*
 888 F.3d 640 (4th Cir. 2018) ................................................. 13

*Henson v. Liggett Group, Inc.,*
 61 F.3d 270 (4th Cir. 1995) ................................................... 14

*Huang v. Rector & Visitors of the Univ. of Va.*,
    No. 3:11-cv-00050, 2011 U.S. Dist. LEXIS 145501
    (W.D. Va. Dec. 19, 2011) ................................................ 18

*James v. Jane*,
    267 S.E.2d 108 (Va. 1980) ...................................... 16

*Jorud v. Michaels Store, Inc.*,
    No. 09-80885-CIV-MARRA, 2010 U.S. Dist. LEXIS 151581
    (S.D. Fla. Aug. 3, 2010) ........................................... 26

*Lewis v. City of Richmond*,
    37 F. Supp. 3d 802 (E.D. Va. 2014) ............................... 18

*Marlow v. Chesterfield Cnty. Sch. Bd.*,
    749 F. Supp. 2d 417 (E.D. Va. 2010) ............................. 15

*Massenburg v. City of Petersburg*,
    836 S.E.2d 391 (Va. 2019) ....................................... 19

*Massey v. Va. Polytechnic Inst. & State Univ.*,
    75 F.4th 407 (2023) ............................................... 20

*Mayes v. City of Norfolk*,
    No. 2:22cv246, 2023 U.S. Dist. LEXIS 145851
    (E.D. Va. July 13, 2023) ................................. 19-20, 21

*Messina v. Burden*,
    321 S.E.2d 657 (Va. 1984) ................................. 16, 22

*Metzler v. Fed. Home Loan Bank of Topeka*,
    464 F.3d 1164 (10th Cir. 2006) .................................. 26

*O'Regan v. Arbitration Forums, Inc.*,
    246 F.3d 975 (7th Cir. 2001) .................................... 24

*Parkhurst v. Am. Healthways Servs., LLC*,
    700 F. App'x 445 (6th Cir. 2017) .............................. 24

*Parkman v. Univ. of S.C.*,
    44 F. App'x 606 (4th Cir. 2002) ............................... 14

*Pastran v. K-Mart Corp.*,
    210 F.3d 1201 (10th Cir. 2000) ............................. 25-26

*Person v. Horizon Health Corp.*,
   No. 2:09-cv-00395 CW, 2011 U.S. Dist. LEXIS 145776
   (D. Utah Dec. 16, 2011) .............................................................. 26

*Robertson v. Huffman*,
   144 F. Supp. 2d 447 (W.D.N.C. 2001) ................................... 15

*Rosenfield v. Wellington Leisure Prods., Inc.*,
   827 F.2d 1493 (11th Cir. 1987) ............................................. 26

*Russell v. Acme-Evans Co.*,
   51 F.3d 64 (7th Cir. 1995) ...................................................... 24

*Russell v. Microdyne Corp.*,
   65 F.3d 1229 (4th Cir. 1995) ................................................... 14

*Sharif v. United Airlines, Inc.*,
   841 F.3d 199 (4th Cir. 2016) .................................................. 23

*Sossamon v. Texas*,
   563 U.S. 277, 131 S. Ct. 1651 (2011) ............................... 16, 17

*Supinger v. Virginia*,
   No. 6:15-cv-00017, 2015 U.S. Dist. LEXIS 161218
   (W.D. Va. Dec. 1, 2015) .......................................................... 21

*Tincher v. Wal-Mart Stores*,
   118 F.3d 1125 (7th Cir. 1997) ................................................ 24

*United States v. Rodriguez*,
   259 F. App'x 270 (11th Cir. 2007) ........................................ 24

*Velasco v. Gov't of Indon.*,
   370 F.3d 392 (4th Cir. 2004) ................................................. 13

*Walton v. Nalco Chem. Co.*,
   272 F.3d 13 (1st Cir. 2001) .................................................... 25

*Wilander v. McDermott Int'l, Inc.*,
   887 F.2d 88 (5th Cir. 1989) ................................................... 24

*Zarnegar v. St. Paul Fire & Marine Ins. Co.*,
   No. 93 C 7744, 1995 U.S. Dist. LEXIS 16501, 1995 WL 656675
   (N.D. Ill. Nov. 6, 1995) .......................................................... 26

*Zero v. TJX Cos.*,
    No. CV 10-5241 CBM(JCGX), 2011 U.S. Dist. LEXIS 164038
    (C.D. Cal. July 21, 2011) ........................................................ 25

## Statutes

28 U.S.C. § 1291 ....................................................................... 1

42 U.S.C. § 2000e .................................................................... 1

Va. Code Ann. § 2.2-3009 ................................................... 1, 22

Va. Code Ann. § 2.2-3011 ...................................................... 15

Va. Code Ann. § 2.2-3012 ...................................................... 22

Va. Code Ann. § 40.1-27.3 ..................................................... 20

## Rules

Fed. R. Civ. P. 56 ................................................................... 14

Fed. R. Evid. 803 ................................................................... 24

# I.   JURISDICTIONAL STATEMENT

Appellant Mary Ann Shumate filed suit against Appellees, the City of Lynchburg, Virginia, Lynchburg's Fire Chief, Gregory Wormser, and Lynchburg's City Manager, Wynter Benda, in the United States District Court for the Western District of Virginia on June 7, 2023, for claims arising under Title VII of the Civil Rights Act, codified at 42 U.S.C. §§ 2000e et seq., and the Fraud and Abuse Whistleblower Protection Act (FAWPA), codified at 2.2-3009, et seq. On June 29, 2023, Appellees filed a Motion to Dismiss all claims, and on September 5, 2023, the District Court granted Appellees' Motion in part and overruled it in part, dismissing Appellant's FAWPA claim with prejudice. On March 4, 2024, Appellees filed a Motion for Summary Judgement, and on May 7, 2024, the District Court granted Appellees' Motion dismissing Shumate's remaining causes of action and entering final judgment for the City of Lynchburg.

This Court's jurisdiction rests on 28 U.S.C. § 1291, as the District Court entered a final order dispensing with all the pending claims before it. Shumate now brings this appeal to the District Court's Orders of September 5, 2023, and May 7, 2024, dismissing her claims in their entirety.

## II. STATEMENT OF ISSUES

1. The District Court erred when it determined that the City, and therefore, the City employee defendants were entitled to sovereign immunity because Shumate brought her case in federal court. The City does not benefit from Eleventh Amendment immunity, and Virginia law has never applied the municipality immunity in tort to claims brought under FAWPA. (JA 132-133).

2. The District Court erred when it determined that Appellant failed to demonstrate that the investigation was merely a pretext for discrimination when Appellant showed that an affidavit prepared in anticipation of litigation for the purpose of substantiating Defendant's allegedly non-retaliatory reason for Shumate's demotion contained patently false statements and was signed by a firefighter on order of the fire chief. (JA 681-684, JA 561-69).

3. The District Court erred when it determined that Shumate had not provided evidence of differential treatment based upon sex, the fourth element of a prima facie case of Title VII Discrimination. (JA 677).

## III. STATEMENT OF THE CASE

Shumate served as a firefighter for the City of Lynchburg between August 2007 and January 2023. (JA 350, JA 669). During that time, she experienced discriminatory and disparate treatment from her superiors including being told she could not ask questions of a male superior officer and being required to submit a doctor's note each time she took a sick day, while none of these rules and restrictions applied to her male coworkers. (JA 245-246, JA 353). Her superior officer repeatedly denied her requests for training consistently voiced his belief that women should not be in the fire

service. (JA 253-254, JA 517). In 2017, Shumate reported her Captain's hostility to Lynchburg's Human Resources department, making a complaint of gender discrimination. (JA 212, JA 274, JA 355). Eventually, Shumate was transferred to another fire station and was finally promoted to Master Firefighter in 2019. (JA 242-243, JA 260).

Despite her promotion, Shumate still experienced discrimination in her job. She was issued a one-size-fits-all ballistic vest which did not fit and restricted her mobility significantly, and then told by Fire Department employee, Randy Campbell, that she needed to "get used to being uncomfortable." (JA 465-468). Battalion Chief (BC) Reeves consistently assigned Shumate to lower-level positions in the medic unit, while he gave less senior male firefighters the higher status position: "riding the seat." (JA 289). BC Reeves habitually denied Shumate's shift trade requests for reasons which were not applied to her male counterparts. (JA 251-252). When she took sick days, Reeves penalized her with less favorable shift assignments. (JA 359).

On June 29, 2021, Shumate made a second complaint of gender discrimination and hostile work environment, specifically naming BC Reeves as the offender. (JA 583). In response, Deputy Chief Jonathan Wright assigned BC Reeves to investigate Shumate's complaints against him, a

further act of harassment. (JA 220-221, JA 583)[1] One week after he interviewed her as a part of the investigation into her gender discrimination complaint against him, BC Reeves denied Shumate's leave request, which had been pending for seven days, while approving leave requests from other firefighters filed that same day. (JA 260). On November 10, 2021, the City determined Shumate's complaint was "unfounded." (JA 381).

### a. Fire Department officials lodge a complaint against Shumate while her complaint of discrimination was under investigation.

While Shumate's complaint against the City was still pending,[2] the City opened an investigation into Shumate based upon a report by Captain Candace Brown. (JA 588). The report by Captain Brown was the sole motivating factor for the investigation. (See JA 478: "allegations of misconduct stemmed from Battalion Chief Daniel Williams' correspondence.")

Captain Brown provided BC Daniel Williams with a report that she "was informed" about a conversation that Shumate had with a subordinate

---

[1] Sometime later, after BC Reeves had conducted his initial interviews, the City's HR Department intervened and assigned the investigation to Randy Trent. Shumate was required to restate her complaint and file it with Trent and Lynchburg HR on August 4, 2021. (JA 380, JA 583).

[2] See JA 304, letter advising Shumate of charges against her on 10/22/21; JA 384, email from Randy Trent announcing conclusion of investigation into Shumate's discrimination complaint, 10/28/21.

employee in which Shumate inquired if another employee's homosexuality bothered the subordinate employee or was offensive to the subordinate employee, or, if the subordinate employee felt uncomfortable. (JA 382). According to Captain Brown, Shumate directed the subordinate employee to let her know if he had any negative reaction to the other employee due to his sexual orientation. (JA 382). Former fire department employee Randy Campbell, the same individual who told Shumate she needed to get used to being uncomfortable in the ill-fitting ballistics vest, was tasked with investigating the situation reported by Captain Brown. (JA 457, JA 478).

At the conclusion of the investigation, on January 7, 2022, Chief Wormser demoted Shumate from Master Firefighter to Firefighter, finding that in questioning a subordinate about whether he had a problem with another employee's sexual orientation, she had violated City of Lynchburg Policies, against "acts of violence" in the workplace including "harassing []　an employee," and "sexually harassing an employee." (JA 520-521).

The City of Lynchburg defines harassment as "verbal [] conduct based on . . . sex . . . sexual orientation, [or] gender identity." Sec. X(A). "Sexual harassment is [at the very least] . . . verbal or physical conduct of a sexual nature when . . . such conduct has [an] effect of substantially interfering with

an individual's work performance or creating an intimidating hostile or offensive working environment." (JA 407).

Given these definitions, a finding of a "founded" complaint against Shumate seems farfetched, but Chief Wormser based his determination that Shumate violated City policy *not on the words she said* but on the alleged effect of these words on other employees: "More than one employee has found your behavior to be harassing. . . . More than one employee had found your behavior to constitute harassment." (JA 521). According to Wormser, "one employee report[ed]: Mary had a conversation with me about another employee's sexuality and I know that is wrong." (JA 520). In his deposition, Wormser testified that "complaints . . . were raised by [multiple] employees." (JA 406).

Wormser also claimed that Shumate's remarks effected the "work performance" of John Bolling, Christopher Mabes, and Sean Wood and "interfere[d] with the assignments that would have been made that day based upon somebody's sexual orientation." (JA 407-408). As Wormser testified, a little unintelligibly, "Our investigation revealed that work performance and the fact that it was offensive was affected." (JA 413). This conclusion, however, is without support in the Investigation Report upon which Wormser claims to rely.

None of the accounts of the interviews conducted by Randy Campbell describe Shumate's conversation as "wrong" or "harassing" or "offensive." (See JA 480-511). The subordinate employees in the conversation described Shumate as "frustrating," the conversation, "weird", but "[not] malicious[]." (JA 598-600). Captain Brown testified that she received no complaints. (JA 640-641). No employee interviewed by Randy Campbell said their work performance was hindered, that they experienced a hostile work environment, or that Shumate's remarks affected any of the day-to-day workings of the fire department. (See JA 480-511). There was no evidence that Shumate's remarks had any impact on firefighter assignments on the day of the conversation or any other day. (JA 412-413). Shumate was demoted anyway, and the City was in agreement with Chief Wormser's decision. (JA 401). After her demotion, Shumate's working conditions continued to deteriorate, and she eventually resigned her employment on January 3, 2023. (JA 127, JA 201).

### b. As Shumate pursued legal remedies, the City shored up its alleged non-retaliatory reason for her demotion.

Chief Wormer issued a letter on February 22, 2022, demoting Shumate from Master Firefighter to Firefighter ALS, effective March 2, 2022, and made her ineligible for promotion for "until 2026," which was later revised to "until 2024." (See JA 520-522). One day after Shumate's demotion

became effective on March 3, 2022, Defendants received a "Litigation Hold" letter from Shumate's attorney. Shumate filed her EEOC charge on or about May 26, 2022. (JA 66-67). In anticipation of litigation, and in preparation for its response to the EEOC charge, Defendant set out to get its ducks in a row.

Between July 26, 2022, and August 8, 2022, eight fire department employees received declarations to sign to buttress the City's case for demoting Shumate. (JA 385, JA 515, JA 519, JA 543, JA 544, JA 547, JA 550, JA 630). One of those Declarations was signed by Captain Candace Brown who "declare[d] under penalty of perjury" that

> On October 5, 2021, I told my superior officer, BC Daniel Williams, about reports I had heard concerning Mary's offensive comments relating to the sexual orientation of a new firefighter who was being assigned to her station. The firefighter [] is gay, and *Mary's comments about him offended some of her subordinates and violated City policy*. On October 6, 2021, I provided a report about that matter to BC Williams.

(JA 630 (emphasis added)). Captain Brown's Declaration was particularly important as she made the report which set in motion the City's investigation of Shumate which resulted in her demotion. Without Captain Brown's report, there would have been no investigation and no demotion. (See JA 640, Brown: "[O]utside of the conversation that . . . I had overheard . . . I'm not aware of anyone submitting anything to HR in terms of that

investigation.")) The City relied upon Captain Brown's Declaration to justify its allegedly non-retaliatory reason for Shumate's demotion.

On August 16, 2022, the City filed a response to Shumate's EEOC charge arguing that Shumate's "demotion was based on her own offensive statements to fellow employees about the sexual orientation of a male firefighter." (JA 582). Recounting the initiating complaint that eventually resulted in Shumate's demotion, the City repeated Captain Brown's Declaration:

> On October 5, 2021, Captain Candace Brown told her superior, BC Daniel Williams, about reports she had heard concerning Shumate's offensive comments relating to the sexual orientation of a new firefighter who was being assigned to her station. The firefighter [] is gay, and Shumate's comments about him offended some of her subordinates and violated City policy. Brown put her report in writing (Exhibit 11), and Williams then reported the incident to his superior, BC Lipscomb (Exhibit 12). *See Brown and Lipscomb Declarations*.

(JA 584 (emphasis added)). The City continued to rely upon Brown's Declaration when it responded to Shumate's Interrogatories:

> [Interrogatory] 15. Please state with particularity each and every reason why the City initiated an investigation of Plaintiff.
>
> **RESPONSE:** See Randy Campbell investigative report (City 714-750) with Attachment 1 (10/6/21 Williams memo to Wright) (City 575-576); interview transcripts (City 635-711). *Also see Brown Declaration* (City 517).

(JA 569 (emphasis added)).

Captain Brown testified in her deposition, however, that she became aware of reports of Shumate's comments "in a general conversation with two other employees," and that no one made a "complaint" or told her they were "bothered" by Shumate's remarks or "offended by what she said." (JA 641-642). Brown also testified she merely "overheard a conversation and [] reported it." (JA 648). She made no determination nor did she know whether Shumate violated a policy. Brown also admitted that she did not draft her declaration, but that it was provided to her by Chief Wormser, and she was told to sign it. (JA 649-650). Brown further testified that the signing had taken place in a meeting with other signers of Declarations pertinent to Shumate's demotion, and all were told to sign the Declarations provided to them. (JA 650).

Despite the fact that Captain Brown's Declaration was shown to be false, the City did not amend its discovery responses or retract its reliance on the Declaration. The City has continued to stand by its decision to demote Shumate even though the offended subordinates were a late in time invention to substantiate Wormser's demotion decision.

While the City did not directly cite the Brown Declaration in support of its MSJ, the City relied upon it when it lifted the "offended" language from

the false affidavit and "pasted it" into Captain Brown's contemporaneous report to BC Williams:

> On October 5, 2021, Captain Candace Brown told her superior, BC Daniel Williams, about reports she had heard concerning Shumate's offensive comments relating to the sexual orientation of a new firefighter who was being assigned to her station. The firefighter, [], is gay, and Shumate's comments about him offended some of her subordinates and violated City policy. Brown put her report in writing and Williams then reported the incident to his superior, DC Lipscomb.

(JA 189-190). Brown's contemporaneous report contained no statement that Shumate's subordinates were offended by her remarks:

> Firefighter C Kilgore stated she was informed about a situation at Fire Station 8 involving Master Firefighter Mary Shumate. The situation is reported as follows: 'Master Firefighter Shumate had a conversation with Firefighter Chris Mabes stating that if New Recruit's [] homosexuality bothered him or was offensive or if he did anything that made him (Mabes) feel uncomfortable, that he (Mabes) was instructed to inform her (Shumate).

(JA 382).

## IV. SUMMARY OF ARGUMENT

The District Court applied an Eleventh Amendment immunity analysis to determine if the individual defendants, City employees, were entitled to sovereign immunity. The City, a municipality, and not a division of the state, does not benefit from the default position of sovereign immunity in federal court. Rather, the City could be entitled only to limited immunity on tort claims only when the City was acting in a governmental capacity, as opposed

to performing proprietary functions. If sovereign immunity did apply, it would apply in *both* state and federal courts. Whether a City is entitled to sovereign immunity is determined under state law. FAWPA's purpose is to allow whistleblowers to report and challenge the unlawful activity of governmental employees in the performance of their duties. No Virginia state court—and no District Court in Virginia evaluating a claim under FAWPA—has applied a tort sovereign immunity analysis to a municipal defendant.

Chief Wormser's determination that Shumate violated City of Lynchburg policy by harassing and sexually harassing another employee was not supported by the evidence adduced by the City's own investigation. When it became clear, however, that Shumate would assert claims against the City, the City caused employees to sign affidavits which it believed would support its decision to demote Shumate after the fact. On such affidavit, the Declaration of Candace Brown, reported that employees were offended by Shumate's policy-violating conduct, when Brown knew of no employee who claimed offense. This production of false "evidence" in anticipation of litigation is a strong indicator of pretext, and supports Shumate's claim that the City's true reason for demoting her was in retaliation for her complaint of sex discrimination which was filed in June 2021, and under investigation

until November 2021.  Moreover, the City's assertion that Shumate sexually harassed an employee when she asked if he had difficulty abiding by the City's EEO policy, reveals the City's allegedly non-retaliatory demotion decision to be pretextual.

Finally, the District Court erred when it failed to consider the repeated allegations of discrimination detailed in Shumate's complaint and discovery responses, instead finding that "Plaintiff has not cited any specific, admissible evidence demonstrating a factual issue for trial" on Count I. (JA 674-675). Shumate's allegations are replete in the pleadings and evidence in this case, and Shumate's counsel was simply unable to list them out "[d]ue to the length of the evidence and the briefing requirements of [the District] Court." (JA 557).

## V.   STANDARD OF REVIEW

The grant of a motion to dismiss on the basis of sovereign immunity is a finding of lack of subject matter jurisdiction. *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted). As such, in reviewing the District Court's decision granting the City's motion and dismissing Shumate's FAWPA claim on the basis of sovereign immunity, this Court must review conclusions of law de novo and findings of fact for clear error. *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

Appellate courts review a district court's summary judgment ruling under a *de novo* standard of review. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995). Under the Federal Rules of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, [and] depositions . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Parkman v. Univ. of S.C.*, 44 F. App'x 606, 615 (4th Cir. 2002). "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essence of the inquiry made by the court is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

On summary judgment, a court may not resolve disputed facts, weigh evidence, or determine credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995). If a court concludes that if a reasonable jury *believed* evidence of the non-moving party, and *disbelieved* the moving party's evidence, the jury could find for the non-moving party at trial, it should

overrule the Motion for Summary Judgement. *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 437-38 (E.D. Va. 2010).

## VI.    ARGUMENT

### a. The District Court erred in determining that the City, and therefore the City's employees, were entitled to sovereign immunity on Appellant's FAWPA claim.

The District Court granted Appellee's Motion to Dismiss Count III of Appellant's complaint determining that Appellees were protected by sovereign immunity. (JA 131). The District Court's decision was in error because it conflated Eleventh Amendment immunity provided to states and their instrumentalities in federal court with municipal governmental function immunity in tort.

The District Court determined that the City's right to sovereign immunity hinged on the fact that Shumate had filed her action in federal court, and FAWPA "waives sovereign immunity [only] in state court" by granting a whistle blower a private right of action to bring a claim "in the circuit court of the jurisdiction where the whistle blower is employed."[3] (JA 134 (citing Va. Code Ann. § 2.2-3011(D))).

---

[3] The establishment of a private right of action and the existence of sovereign immunity are two separate inquiries.  See *Robertson v. Huffman*, 144 F. Supp. 2d 447, 452 (W.D.N.C. 2001).

The District Court noted that its "holding merely acknowledges that the Act does not waive sovereign immunity in federal court," finding that the City's immunity must be affirmatively waived—or it continues to be effective. Id. The District Court continued: "The Supreme Court [of the United States] has routinely held that 'a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court.'" Id. (citing *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (citation omitted)). Because "Virginia has not clearly consented to lawsuits in federal court, federal court is an improper venue for claims under [FAWPA]". Id.

Concluding that the City was entitled to sovereign immunity in federal court, given that venue in federal court was "improper," the District Court proceeded to dispose of Appellant's claims using a governmental function analysis. (See JA 132). Citing Virginia law's grant of limited sovereign immunity to municipalities in tort liability, the District Court undertook an analysis of the Defendants' "function," and determined that since the City was "maintaining a fire department, including. . . managing its human resources by making disciplinary decisions," the City was exercising governmental functions, and thus, entitled to sovereign immunity.[4] Id.

---

[4] The District Court undertook a separate analysis using four factors derived from *James v. Jane,* 267 S.E.2d 108, 113, (Va. 1980) and echoed in

There are at least two problems with the Court's decision.

### i. The City does not benefit from a default position of sovereign immunity because the Eleventh Amendment does not apply to municipalities.

The District Court cites *Sossamon* in support of its determination that the Virginia General Assembly, through FAWPA, did not consent for the City to be sued in federal court. (JA 134). *Sossamon*, however, is inapplicable. In that case, the United States Supreme Court held that without an express waiver, Texas retained its *Eleventh Amendment immunity* to a federal statutory claim brought in federal court. See *Sossamon*, at 294, 131 S. Ct. at 1663 (states have Eleventh Amendment immunity unless they expressly waive that immunity). The City does not benefit from the same default position of sovereign immunity. Cities or municipalities are not "instrumentalities of the state."

> [The 11th Amendment] does not immunize political subdivisions of the state, such as municipalities . . . even though such entities might exercise a 'slice of state power.' . . . *As a municipality, [a] City does not enjoy Eleventh Amendment immunity.*

---

*Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984), to determine that the individual defendants, City employees, were also entitled to sovereign immunity.

*Lewis v. City of Richmond*, 37 F. Supp. 3d 802, 804 (E.D. Va. 2014) (citations omitted) (emphasis added).

> ### ii. The District Court incorrectly applied a governmental function analysis used to determine municipality liability in tort.

If the City were entitled to sovereign immunity in federal court as the District Court believed, no further analysis would be necessary. Eleventh Amendment sovereign immunity operates as a bar to the action. In *Huang v. Rector & Visitors of the Univ. of Va.*, No. 3:11-cv-00050, 2011 U.S. Dist. LEXIS 145501, at *42 (W.D. Va. Dec. 19, 2011), a professor brought federal claims, as well as a state law claim under FAWPA against the University of Virginia in federal court. The District Court ruled that the plaintiff's FAWPA claim against the University was barred by sovereign immunity because the University is "an instrumentality of the state entitled to immunity from suit in federal court under the Eleventh Amendment." Id. at *42-43. The Western District continued:

> With respect to the [FAWPA], there is no indication that Virginia intended to waive its immunity from suit in federal court for the purposes of retaliation claims. While the General Assembly did explicitly create a remedy for such retaliation in the courts of Virginia, a state's waiver of sovereign immunity from liability in state court is not an automatic waiver of Eleventh Amendment immunity in the federal courts.

Id. at *44.

Finding that the City benefited from Virginia's lack of consent to suit in federal court, (see JA 134), and thus was entitled to immunity in federal court, the District Court found that such immunity was "limited," and its application depended on whether the City was exercising a governmental function when it performed the objectionable acts. (See JA 132).

Thus, under the District Court's analysis, a plaintiff could bring a FAWPA claim against a municipality in state court *without regard* for whether the city was exercising a governmental function, but if the case were filed in federal court, a plaintiff's claim would be barred *unless* he could show the city was not exercising a governmental function. Municipal sovereign immunity does not work that way. Cities have limited sovereign immunity to tort claims—period—regardless of the court in which the claim was brought.

Municipal immunity for tort liability is not a second step in determining liability on any claim against a municipality simply when a municipality is sued in federal court. Rather, it may be asserted in both state and federal courts *against claims brought in tort*. See, e.g., *Massenburg v. City of Petersburg*, 836 S.E.2d 391 (Va. 2019) (wrongful death claim brought on behalf of firefighter against city); *City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426 (Va. 2004) (common law tort claims against city for exposure of public to toxins in water supply). See also, e.g., *Mayes v. City of*

*Norfolk*, No. 2:22cv246, 2023 U.S. Dist. LEXIS 145851, at *17 (E.D. Va. July 13, 2023) (defamation), *Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 635 n.16 (W.D. Va. 2023) (defamation). Thus, if the governmental function analysis for tort liability is applicable to claims brought against cities and towns under FAWPA, there ought to be evidence of this analysis in state court cases brought under the statute.[5] There is none. See *Alexander v. City of Chesapeake*, 108 Va. Cir. 161, 161 (Chesapeake 2021).

Until this case, no Federal District Court in Virginia has assumed that municipal sovereign immunity in tort has any applicability to a plaintiff's claims under FAWPA.[6]  Instead, at least two district court decisions found

_____

[5] The application of sovereign immunity to claims brought against municipalities is determined by state law—not the court in which the claim is brought. See *Bumbales v. City of Vandalia*, No. 2:18 CV 13 JMB, 2018 U.S. Dist. LEXIS 124271, at *10-11 (E.D. Mo. July 25, 2018) (applying Missouri law to case brought against municipality in federal court noting that in Missouri, "a public entity only waives sovereign immunity through the purchase of liability insurance to the extent of or for the specific purposes covered by the insurance purchased"). See also *Massey v. Va. Polytechnic Inst. & State Univ.,* 75 F.4th 407, 415 (2023) (citing state court decisions for application of sovereign immunity*).*

[6] But see *Baka v. City Of Norfolk*, No. 2:21-cv-419, 2022 U.S. Dist. LEXIS 43559, at *13-19 (E.D. Va. Mar. 11, 2022) (applying sovereign immunity analysis to claims brought under general whistleblower law, codified at Va. Code 40.1-27.3, but not to claims brought under FAWPA, and finding that City was not entitled to sovereign immunity because operation of a

that municipal sovereign immunity could bar a plaintiff's tort claims against a city but omitted any mention of sovereign immunity when discussing the plaintiff's contemporaneously filed FAWPA claim. In *Mayes v. City of Norfolk*, No. 2:22cv246, 2023 U.S. Dist. LEXIS 145851, at *17 (E.D. Va. July 13, 2023), the district court dismissed the plaintiff's defamation claims against the city based upon sovereign immunity but did not apply the same bar to the plaintiff's FAWPA claims. In *Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 635 n.16 (W.D. Va. 2023), the Western District did the same thing, finding that the city would have sovereign immunity on the plaintiff's defamation claim, but leaving out any mention of sovereign immunity when discussing the plaintiff's FAWPA claim.

These district court decisions leave out any discussion of sovereign immunity or any analysis of a municipality's activities when evaluating a plaintiff's FAWPA claims because FAWPA exists to hold government entities accountable *as they execute their governmental functions*.[7]

---

municipal fire department is a proprietary rather than a governmental function under Virginia law).

[7] Contrast these three decisions with *Supinger v. Virginia*, No. 6:15-cv-00017, 2015 U.S. Dist. LEXIS 161218, at *1 (W.D. Va. Dec. 1, 2015) where the Commonwealth had to agree to waive sovereign immunity on FAWPA claim to stay in federal court.

> It shall be the policy of the Commonwealth that citizens of the Commonwealth and employees of governmental agencies be freely able to report instances of wrongdoing or abuse committed by governmental agencies or independent contractors of governmental agencies.

Va. Code Ann. § 2.2-3009. FAWPA is not meant to protect the public from intentional torts committed by public employees outside the scope of their employment, but *to help the government* identify instances where governmental employees are acting against the public interest by violating the law or misusing government assets in the course of their employment. Indeed, FAWPA establishes a fund to reward whistleblowers for reports which yield a recovery to the government of more than $5,000.00. See Va. Code Ann. §§ 2.2-3012(B), -3014.

The City is not entitled to sovereign immunity in federal courts, generally, and the limited immunity to tort claims based upon governmental function does not apply to claims brought under FAWPA. Because the District Court extended immunity to the individual defendants, based upon a finding that the City had immunity, that decision is also in error. See *Messina v. Burden*, 321 S.E.2d 657, 660-62 (Va. 1984).

### b. Shumate has raised a factual dispute with regard to the City's allegedly non-retaliatory reason for her demotion.

The District Court determined that while Shumate had made out a prima facie case for Title VII retaliation, she failed to rebut Defendant's

proffered non-retaliatory reason for her dismissal: violation of city's harassment policy. (JA 675). Shumate put forward evidence that (1) Captain Brown's affidavit supposedly memorializing the information provided by Captain Brown which initiated the investigation against Shumate and ultimately resulted in her demotion, was patently false, (see JA 561-69), and (2) even taken in the light most favorable to the City, Shumate's comments simply followed the City's EEO policy regarding a supervisor's duty when confronting possible discrimination in the workplace, (see JA 570-577).

### i. Captain Brown's patently false Declaration establishes "pretext," showing that the City's allegedly non-retaliatory reason for Shumate's demotion was a "cover" for the clear intent to retaliate.

Once a Plaintiff establishes a prima facie case that the elements of retaliation are satisfied,

> [t]he burden of production then shifts to the employer to . . . provide some legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination.

*Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (citations and internal quotation marks omitted).

"The pretext inquiry focuses on the honesty-not the accuracy--of the employer's stated reason for the termination." *Tincher v. Wal-Mart Stores*, 118 F.3d 1125, 1129 (7th Cir. 1997) A showing of pretext is inexorably linked to proof of falsity. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir. 2001) ("Pretext" means a dishonest explanation, "a lie rather than an oddity or error.") *Parkhurst v. Am. Healthways Servs., LLC*, 700 F. App'x 445, 449 (6th Cir. 2017) (pretext is a "coverup"); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) ("[pretext] means a lie"); *Ambush v. Montgomery Cty. Gov't Dep't of Fin. Div. of Revenue*, 620 F.2d 1048, 1049 (4th Cir. 1980) (pretext intended to "mask" an employer's true retaliatory motivation).

In the evidentiary context, a witness' "statement . . . prepared in anticipation of litigation [which is] later contradicted [by the witness herself]" is untrustworthy under FRE 803(D). *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 92 (5th Cir. 1989). *See also United States v. Rodriguez*, 259 F. App'x 270, 274-75 (11th Cir. 2007) (judging affidavits to be "conclusory, self-serving statements made in anticipation of litigation, when the affiants had significant incentive to make false exculpatory statements "); *Advanced Reimbursement Sols. LLC v. Spring Excellence Surgical Hosp.*

*LLC*, No. CV-17-01688-PHX-DWL, 2020 U.S. Dist. LEXIS 20176, at *14-15 (D. Ariz. Feb. 5, 2020) ("courts usually reserve findings of untrustworthiness for cases involving records that are nonroutine, prepared in anticipation of litigation, or otherwise suggest the existence of a motive and opportunity to falsify"); *Zero v. TJX Cos.,* No. CV 10-5241 CBM(JCGX), 2011 U.S. Dist. LEXIS 164038, at *7 (C.D. Cal. July 21, 2011) ("letter appears to have been produced in anticipation of litigation and is therefore untrustworthy").

Documentation of an employer's allegedly non-retaliatory reason for an employee's demotion which is produced after the fact and in anticipation of litigation can show that employer's reason was pretextual. See *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 23-24 (1st Cir. 2001) (holding that a "jury reasonably could have found that [the employer] orchestrated [the employment document] as pretextual support for its [discriminatory] decision to discharge [the employee]," where the document was prepared *only after* the employer received notification from the employee's attorney claiming age discrimination); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1207 (10th Cir. 2000) ("suspicious timing of documentation--after the fact and in anticipation of litigation--reasonably gave rise to an inference

of pretext"); *accord Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1177 (10th Cir. 2006) (citation omitted); *Aufdencamp v. Irene Stacy Community Mental Health Ctr.*, 234 F. Supp. 2d 515, 518 (W.D. Pa. 2002) (evidence of a post-hoc attempt to justify an employment decision may be evidence of pretext); *Zarnegar v. St. Paul Fire & Marine Ins. Co.*, No. 93-C-7744, 1995 U.S. Dist. LEXIS 16501, 1995 WL 656675, at *7 n.5 (N.D. Ill. Nov. 6, 1995) ("After-the-fact attempts to provide documentation justifying an employment decision may be evidence of pretext."); *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1496 (11th Cir. 1987) (noting that employer's decision to obtain evidence after the fact suggested pretext).

Shumate established an issue of material fact as to pretext when she showed that the City relied upon a false affidavit, and thus has put forward sufficient evidence from which a reasonable fact finder could reject the City's proffered reasons for her termination as unworthy of credence. See *Jorud v. Michaels Store, Inc.*, No. 09-80885-CIV-MARRA, 2010 U.S. Dist. LEXIS 151581, at *45-46 (S.D. Fla. Aug. 3, 2010). See also *Person v. Horizon Health Corp.*, No. 2:09-cv-00395 CW, 2011 U.S. Dist. LEXIS 145776, at *9 (D. Utah Dec. 16, 2011) (sustaining motion for summary judgement when backdated documents prepared near the time of plaintiff's termination could indicate pretext).

### ii. Shumate was not harassing anyone; she was inquiring whether her subordinate had any difficulty abiding by the City's EEO Policy.

Chief Wormser testified "talking about another person's sexual orientation in the workplace" is a violation of the City's policy against sexual harassment. (JA 413-414). Under Wormser's analysis, mentioning an employee's membership in a protected category—for any reason at all—would constitute harassment under City policy.

The City has an Equal Opportunity Policy which states that it "will not discriminate on the basis of race, color, religion, sex, national origin, age physical or mental disability, military status, status as a veteran, marital status, pregnancy, childbirth or related medical conditions (including lactation), sexual orientation, gender identity, or any other basis prohibited by Federal or State law." (JA 577). Shumate questioned a subordinate employee to determine if the employee would have any difficulty abiding by the policy when it came to working with an employee with a different sexual orientation. Wormser opined however, that such a conversation could likely not be had without "substantially interfer[ing] with an individual's work performance." (JA 415.) This line of questioning is commonplace in corporate HR and personnel situations, lending support to Shumate's

position that her demotion was pretext to cover the City's true retaliatory motive.

### c. Appellant has provided instances of differential treatment sufficient to satisfy the fourth element of a prima facie case of Title VII discrimination.

"[T]he elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citations omitted). That Appellant established the first three elements of the prima facie case for discrimination is uncontested.

Shumate asserted in opposition to the City's Motion for Summary Judgement that she "would present facts [in support of her Title VII Discrimination claim]. . that demonstrate [the fourth element—that] she was treated differently than similarly situated" male employees. (JA 557).

Specifically, Shumate claimed that she was not permitted to ask questions of her supervising Captain, while other male employees were not restricted,(JA 273); that she was reprimanded for reporting that her standard issue one-size-fits-all ballistics vest was unwearable because it was so large, and told that (as a woman) she needed to "get used to being

uncomfortable," (JA 274); that her requests for time off and for training were repeatedly denied, (JA 276); that she, and not her male co-workers, were required to submit a doctor's note when she missed work, (JA 276).

## VII.    CONCLUSION

The District Court's dismissal of Appellant's FAWPA claim should be reversed. The City was not entitled to sovereign immunity simply because it was in federal court, and municipal sovereign immunity for tort claims does not apply to claims brought under FAWPA. The District Court's grant of summary judgment on Appellant's Title VII claims should be reversed as Appellant has shown she suffered discrimination and that the City's proffered reason for her demotion was pretextual.

## VIII.    REQUEST FOR ORAL ARGUMENT

On behalf of the Appellant, we hereby request oral argument.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA 24018
Tel: 540-283-0802
thomas@strelkalaw.com